## COMFORT v. DUNCAN.

### April 23, 1836.

*Rule to show cause why a new trial should not be granted.*

Where A leases a farm to B for five years, *conditioned* however that at any time during that period A may give three months' notice to B to quit in case of sale by the former, and A sells the farm before the expiration of the five years, and B leaves the premises with a crop in the ground, sown by him, the proceeds of which are taken by A: *Held*, 1. That A is liable to B for the same, not on the doctrine of the 'way-going crop, under the custom of Pennsylvania, but as *emblements* by the common law, under the lease, whether he received three months' notice to quit or not. 2. Even if such notice would have defeated the right of B to the crop, mere *knowledge* of the sale, on the part of B, is not equivalent to such notice.

THIS was an action of *trover* brought to recover damages for the conversion of a quantity of wheat and rye, and wheat and rye straw. The plaintiff entered into possession of a certain farm in Philadelphia county, the property of the defendant, in the spring of 1831, and left the premises in the fall of 1833. He received a winter crop, which was in the ground when he entered. The terms of the lease appeared in a letter from the defendant to the plaintiff, in the following words:

"*Carlisle, March 20th,* 1830.

"Dear Sir,—I received your letter this morning. Although you have not convinced me that my offer was unreasonable, I have concluded, on the whole, to let you have the farm at the 500 dollars per annum, for five years; three months' notice to be given in case of sale during the term of the lease, and no rent to be paid for the year in case of sale. I reserve the mansion house and two small tenements adjoining it—the garden and small patch adjoining it. I cannot, at present, reduce the lease to form. I shall be in the city sometime in April, and will see you. This is to authorize you to take possession on the above terms. Yours,

"STEPHEN DUNCAN."

The crop, the proceeds of which were now claimed, was sown by the plaintiff, and was in the ground when he left the farm. The premises were sold by the defendant before the plaintiff left them; and the crop was cut by one Amos Thorp. To prove the alleged

[Comfort v. Duncan.]

conversion, Thorp was examined as a witness. He testified that he cut the grain in 1834; that he harvested it and hauled it and thrashed it; that Mr Duncan stated it was his (Duncan's); and that he (Thorp) acted under Mr Duncan's orders. That he was the tenant of the place, and that the crop was partly consumed and partly sold on the place. In regard to the question of notice of the sale and to quit, there was evidence that two written notices had been given to the plaintiff. Copies were not produced, and the witness who delivered them could not fix the time of serving either of them; he said, however, that when the first was given, the plaintiff had sown very little, if any grain; and that a month before the second was served, and several months before he left the farm, the plaintiff had told the witness that the place was sold, and that he had seen the deeds.

Judge STROUD, before whom the cause was tried, after stating to the jury that unless the plaintiff had proved that the defendant had converted the crop to his own use there could be no recovery, and that this was a question of fact for their decision, charged them substantially, *first*, that the plaintiff was entitled to recover, not on the doctrine of the " *'way going crop*," under the custom of Pennsylvania, but as *emblements* by the common law, under the lease proved, whether he received three months' notice to quit or not; and in the *second* place, that even supposing that three months' notice would have defeated the plaintiff's right to the crop, yet that mere knowledge of the sale was not, under this lease, equivalent to such notice.

A verdict having been rendered in favour of the plaintiff, this rule was obtained by the defendant; and the principal grounds relied upon it to support it were, that there was error in each of these points of the charge.

*Gerhard*, in support of the rule, cited: *Woodfall on Landlord and Tenant* 471, 475; *Chambers on Landlord and Tenant* 9; 4 *Kent's Comm.* 109, 179; 9 *Viner's Ab.* 364, *Emblements, sect.* 1; 2 *Penns. Rep.* 439.

*Oakford, contra,* cited: *Comyn on Landlord and Tenant* 357; 6 *Law Library* 200.

The opinion of the Court was delivered by

PETTIT, *President* (after stating the facts).—1. The common law

[Comfort v. Duncan.]

doctrine laid down by *Littleton, sect.* 68, by which a tenant for years, knowing the certainty of his term, has no right to the crop of grain sown by him during the lease, and coming to maturity after its expiration, has been modified by a general custom in Pennsylvania, that where a lease commences in the spring of one year, and ends in the spring of another, and the tenant did not receive a crop at the commencement of the lease, he shall have the crop of winter grain sown by him the autumn before the lease expired. Shultze *v.* Dickey, 5 *Binn.* 285. The rule in regard to the *'way going crop,* would seem to have been an extension, for the encouragement of agriculture, to the particular instance embraced by the custom, of the principle of the common law, according to which a tenant at will or for life, and in the language of sir Edward Coke, (*Co. Litt.* 55, *b*) " every particular tenant that hath estate incertain," is entitled to reap, after the determination of his lease, the crop sown by him in peace before it. It is the annual profit raised by the hand of the tenant, and not the permanent growth of the earth, to which the right of the tenant attaches, and this the common law denominates *emblements.* The tenant is entitled to the emblements whenever the determination of the lease is contingent upon the act of the lessor. Though in this instance the period of five years was designated as the utmost length of the term, yet the landlord reserved the right of putting an end to it, upon giving three months' notice in case of a sale. As the tenant received a winter crop when he entered, the custom of the state would not have applied, even if the five years had run out. In excluding the case from the effect of the custom, it is brought then directly within the operation of the common law, unless some special circumstances exist to prevent it. Two matters are relied upon on the part of the defendant, namely, the stipulation that no rent was to be paid for the year in case of a sale, and the fact that the plaintiff received a winter crop when he entered. As to the first of these, it is to be remarked, that the arrangement is sufficiently intelligible, without the aid of the presumption that it was to interfere with the general privilege of the tenant. As it is not incompatible with such privilege, the court cannot by the infusion of a new ingredient, give more effect to the contract of the parties than their own language plainly requires. When lord Coke (55 *b*) says: " if the lessee at will sow the ground with corn, &c., and after he himself determine his will and refuseth to occupy the ground, in that case the lessor shall have the corn, because he loseth his rent," he clearly recognises the

notion, that the lessor's right to the corn in case of losing the rent, is founded upon the act of the lessee in determining his will, and thus causing the landlord to lose the rent. It becomes necessary then to examine the other suggestion which relates to the receipt of a winter crop at the commencement of the lease.

The reason given by lord Coke why a tenant at will shall have the corn is, " that the estate of the lessee is incertain, and therefore lest the ground should be unmanured, which would be hurtful to the commonwealth, he shall reap the crop which he sowed, in peace, albeit the lessor doth determine his will before it be ripe ;" and he adds, " this is not only proper to a lessee at will, but to every particular tenant that hath an estate incertain." The multiplication of the fruits of the earth, and the advancement of good husbandry are the objects mainly contemplated. In regard to these purposes, the fact of the receipt of the winter crop found in the earth, would have no decisive operation. The enjoyment of that crop being complete and past, it has no necessary or obvious tendency to encourage the tenant to make the most of the land. The only sure mode of inducing him to do his utmost, is to yield to him the right of reaping for himself the profits of his own skill and labour. The reasons upon which the doctrine of emblements is founded, are not then affected by any thing either in the contract or the conduct of the present parties. If a departure from the general obligations which the law imposed was contemplated, it should have been the subject of an express provision. As the case is now presented, it was governed by the common law rule, and the charge of the court was right.

2. The decision on the first point renders it perhaps unnecessary to advert further to the question as to knowledge and notice. It may be observed however that the doctrine recognised by our supreme court in Lodge v. Simonton, 2 *Pennsylvania Rep.* 449, relative to purchasers of real estate, that whatever is sufficient to put the party on inquiry is good notice in equity, has no application whatever to a case like this. Here the parties are controlled by their agreement, which is sufficiently explicit. It was competent to the landlord to make such a sale as would not immediately and necessarily affect the tenant. The obvious meaning of the parties was, not that the lease should determine absolutely and peremptorily in three months after a sale, but that in case of a sale, the tenant would surrender the premises on receiving from the landlord actual

[Comfort v. Duncan.]

notice that it was his pleasure that the tenant should do so. Mere knowledge of the plaintiff of the sale, was not therefore equivalent to actual notice from the defendant to quit.

Rule discharged.

